**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FRANK J. LAWRENCE, JR,
                              Plaintiff,

                                                            Case No. 00-74302

v.

                                                            Hon. Avern Cohn

BLOOMFIELD TOWNSHIP, et al.,
                              Defendants.
_____/


## MEMORANDUM AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction

        This is a civil rights case under 42 U.S.C. § 1983 with pendant state law claims.

Plaintiff Frank J. Lawrence, Jr. (Lawrence) is suing defendants Bloomfield Township

(Township), Bloomfield Township Supervisor David Payne (Payne) in his official

capacity, Bloomfield Township Police Chief Jeffrey D. Werner (Werner) in his official

and individual capacity, Bloomfield Township Police Department Detective James

Cutright (Cutright) in his official and individual capacity, and police officers Scott

Monkkonen (Monkkonen), Gary Godlewski (Godlewski), Sean Kelley (Kelley), and Jill

McAtee (McAtee) in their official and individual capacities for events leading to

Lawrence's arrest.

        Before the Court is defendants' motion for summary judgment.  For the reasons

that follow, the motion will be granted, Lawrence's federal claims will be dismissed, and

his state law claims will be dismissed without prejudice.

II. <u>Background</u>

The material facts as gleaned from the parties' papers follow.

A.  Factual Background

On Saturday, August 19, 2000, at 6:54 p.m., Bloomfield Township Police Department's 911 emergency center received a call from Lawrence's brother, Christian Lawrence, reporting that their father, Frank Lawrence, Sr. (Lawrence, Sr.) hit Christian in the face with a board and that he was bleeding from his eye.  The 911 operator dispatched Monkkonen, Godlewski, Kelley, and McAtee to Lawrence's parent's house, located at 941 Westview Road in Bloomfield Township, and the officers arrived at 6:59 p.m.

Upon arrival at the scene, Godlewski, Kelley, and McAtee were approached by Christian Lawrence at the front door of the house, whose right eye was cut in several spots and whose face was red and swollen.  Christian stepped outside and the officers administered first aid and requested an ambulance.  Christian told the officers what happened and indicated that there was a personal protection order (PPO) prohibiting Lawrence, Sr., from being on the property.  Kelley and Godlewski saw Lawrence, Sr., standing inside the house; they ordered him to step outside.  Lawrence, Sr., admitted hitting Christian; Godlewski arrested him for domestic violence and for violating a valid PPO.

During the arrest, Monkkonen asked Kelley and Godlewski if anybody else was inside the house.  Kelley stated that Lawrence was inside, but neither officer knew if anybody else was in the house.  Godlewski saw Lawrence standing in the hallway inside the house; he asked Lawrence to step out onto the porch.  Lawrence replied,

2

"Fuck you."  When Godlewski again asked Lawrence to step outside, Lawrence said,

"Fuck you, arrest me."  Monkkonen then called inside the house for Lawrence to step

outside of the house.  Lawrence approached the front door but stayed inside.

Monkkonen again asked Lawrence to come outside, to which Lawrence replied, "Fuck

you.  You will have to get a search warrant."  Monkkonen told Lawrence that they were

investigating a crime and had a right to enter the house to check for additional suspects

or victims and for evidence of the crime.  Lawrence, who was then a third-year law

student at the University of Detroit-Mercy Law School, then began to recite a court case

to Monkkonen.  During this recitation, Monkkonen and Godlewski asked Lawrence

several more times to exit his house, but he repeatedly refused.  Godlewski then

reached inside the house and pulled Lawrence outside.  Monkkonen assisted

Godlewski and then ordered Lawrence to the ground.

Monkkonen proceeded to check the interior of the house for additional suspects

or victims while Godlewski told Lawrence to sit on a bench.  McAtee retrieved the board

used by Lawrence, Sr., to hit Christian Lawrence after Monkkonen checked the house

for suspects or victims.  Monkkonen returned to Lawrence and asked him if he

witnessed the domestic assault of his brother, but Lawrence stated, "fuck you."

Monkkonen then arrested Lawrence for interfering with a police officer under Bloomfield

Township Ordinance No. 37, § 16.01(a).  Lawrence was taken to the Bloomfield

Township Police Department, where he complained of pains in his neck, back, and right

leg.  Lawrence was transported to Pontiac Osteopathic Hospital in Pontiac, Michigan,

and later that evening taken back to the Bloomfield Township Police Department.

Lawrence's sister posted a $100 cash bond, and Lawrence was released at 10:27 that

3

evening.  On September 11, 2000, a magistrate issued a warrant for Lawrence's arrest under the Bloomfield Township ordinance, charging him with the misdemeanor interfering with a police officer.

B.  Procedural History in Bloomfield Township and in this Court

Bloomfield Township initiated proceedings against Lawrence in Michigan's 48th Judicial District Court for the ordinance violation.

At some point thereafter, Lawrence filed an action against Bloomfield Township in Oakland County Circuit Court to enjoin the district court criminal proceedings and also requested a declaratory ruling that the ordinance was unconstitutional.  That case apparently was stayed pending resolution of the state criminal proceedings.

On October 4, 2000, Lawrence filed this action alleging that the Bloomfield Township ordinance was unconstitutional, violations of 42 U.S.C. § 1983, and various state law tort claims.  Lawrence then filed a motion for a preliminary injunction, seeking to enjoin the enforcement of the ordinance and the Township's prosecution of him under the ordinance.  The court denied the motion.  On March 12, 2001, Lawrence filed a motion to stay proceedings in this Court pending resolution of the state court proceedings.  On March 15, 2001, defendants filed a motion for summary judgment, and on March 20, 2001, defendants filed an amended motion for summary judgment. The Court granted Lawrence's motion to stay proceedings on March 27, 2001.  In its Order, the Court noted defendants' motion for summary judgment would not be addressed until the conclusion of the state court proceedings against Lawrence.  On March 30, 2001, Lawrence filed a response to defendants' motion for summary judgment.

4

On June 6, 2001, Lawrence filed an <u>Ex Parte</u> motion to temporarily lift the stay of proceedings so the Court could hear Lawrence <u>in camera</u> regarding his request to place Defendants' Exhibit 1 (attached to Defendants' motion for summary judgment) under seal.  The documents in Exhibit 1 consist of police reports and records dating back to December 1991 regarding contact between the police and Lawrence and his family. The Court denied the motion, finding no circumstances to support placing the evidence under seal.  Lawrence filed a motion requesting an order allowing him to appeal the Court's order denying his motion to seal Defendants' Exhibit 1.  Alternatively, Lawrence sought permission to appeal the Court's Orders denying his request to enjoin the state court criminal proceeding.  The Court denied the motion because it found no basis to allow Lawrence to immediately appeal the orders.

On July 3, 2001, Lawrence again sought to temporarily lift the stay of proceedings when he sought equitable relief from the Court's March 27, 2001, Order which granted the stay.  The Court denied, the motion, finding nothing to suggest a palpable error was made by the Court.

On September 20, 2001, Lawrence filed in the Court of Appeals for the Sixth Circuit a petition for a writ of mandamus, seeking an order directing this Court "to hold an evidentiary hearing to determine the veracity of the Petitioner's claims that a bad faith prosecution has been initiated against him . . . ."  On October 9, 2001, Lawrence also filed an emergency motion for a stay of the state court proceedings pending consideration of his mandamus petition.  The Sixth Circuit denied both the emergency motion and the petition for a writ of mandamus.

Additionally, Lawrence's father, Lawrence, Sr., who is a licensed attorney, filed a

5

motion on behalf of himself and other members of Lawrence's family, asking the Court

to allow them to intervene in the case on the grounds that the material in Defendants'

Exhibit 1 violates their privacy rights.  The Court denied the motion.  Both Lawrence and

Lawrence, Sr., appealed the Court's orders to the Sixth Circuit, where they were

unsuccessful.  See Order in In re: Frank Lawrence, Jr., No. 01-2271 (6th Cir. Oct. 12,

2001) (unpublished); Order in In re: Frank Lawrence, Jr., No. 01-2271 (6th Cir. Nov. 6,

2001) (unpublished); and Order in Lawrence v. Charter Township of Bloomfield, No. 01-

2178 (6th Cir. Dec. 11, 2001) (unpublished).

On April 11, 2002, Lawrence, Sr., again filed a motion in which he sought to

intervene to maintain the confidentiality of Defendants' Exhibit 1 and/or require the

Court to issue findings of fact and conclusions of law regarding the same.  The Court

denied the motion.  Also of note, attached to Lawrence Sr.'s motion was a letter from

the United States Supreme Court granting him an extension of time to file a petition for

writ of certiorari to May 10, 2002, indicating he was seeking review in the U.S. Supreme

Court.

The state court jury trial in Michigan's 48th District Court ended with a guilty

verdict against Lawrence on April 8, 2002.

Following Lawrence's conviction, on May 22, 2002, Defendants filed

supplemental papers on the motion for summary judgment, and on May 23, 2002,

Defendants filed a reply brief in support of their supplemental papers on their motion for

summary judgment.  The supplemental papers indicate Defendants' desire to have the

Court lift the stay on proceedings and find Lawrence's claims barred by collateral

estoppel.  Lawrence was directed to respond to the supplemental papers by June 21,

6

2002.  Lawrence did not respond.

### B.  Lawrence's State Court Proceedings

The following information was obtained by contacting the 48th District Court Clerk's Office, Oakland County Circuit Court Clerk's Office, and the Michigan Court of Appeals Clerk's Office.

On June 26, 2002, Judge Edward Avadenka of the 48th District Court sentenced Lawrence to one year of non-reporting probation and 500 hours of community service with Oakland County Legal Aid, to be completed no later than June 25, 2003.

On July 23, 2002, Lawrence filed with the 48th District Court a motion fashioned as "motion to stay sentence pending an appeal, defendant's objection to sentence, and defendant's motion on rehearing on issues decided by a disqualified judge."  The Clerk's Office in the 48th District Court informed that Lawrence's motion was sent to Judge Frederick L. Harris in Michigan's 47th District Court, because all judges in the 48th District Court have recused themselves from further proceedings in this case.  The 47th District Court has scheduled a preliminary hearing date of September 5, 2002, for Lawrence's motion.  The outcome of that motion is not clear.

Lawrence apparently appealed his conviction.  The Oakland County Circuit Court, however, has no record of any appeal following his conviction.  On July 26, 2002, the Michigan Court of Appeals entered an order denying leave to appeal.  It is presumed that this order pertains to Lawrence's direct appeal.  People v. Lawrence, No. 25440 (Mich. Ct. App. July 26, 2004).  The Michigan Supreme Court denied leave to appeal that order.  People v. Lawrence, 472 Mich. 942 (Mich. June 30, 2004).  It is not clear from these orders, or the record, what issue(s) Lawrence raised on direct appeal.

7

Meanwhile, on August 6, 2002, the Court entered an order continuing the stay until a final resolution of the state court proceedings.  The Court also stated that "consideration of defendants' motion for summary judgment is adjourned without date.  Defendants shall promptly notify the Court of the final resolution of the state criminal proceeding."

Following his conviction, Bloomfield Township moved for summary disposition in the Oakland County Circuit Court case; Lawrence filed a cross motion.  The trial court denied the motion.  The Michigan Court of Appeals affirmed.  Lawrence v. Bloomfield Twp., No. 243527 (Jan. 20, 2004) (unpublished).  The Michigan Supreme Court denied leave to appeal.  Lawrence v. Bloomfield Twp., 471 Mich. 870 (Aug. 31, 2004).

At some point thereafter, defendants contacted the Court and informed that the criminal proceedings were concluded.

On August 8, 2005, the Court held a status conference with the parties and indicated that it would go forward with a decision on defendants' summary judgment motion.  On September 1, 2005, plaintiff filed a supplemental response.  On September 23, 2005, defendants filed a supplemental reply.

### C.  Lawrence's Complaint

#### 1.  The Parties

Lawrence is suing Bloomfield Township; Payne in his official capacity as Bloomfield Township Supervisor; and Werner, Cutright, Monkkonen, Godlewski, Kelley, and McAtee in their individual and official capacities.

#### 2.  The Claims

Lawrence claims that the ordinance is unconstitutional, that defendants used

8

excessive force and lacked probable cause in arresting him, in violation of his First,

Fourth, and Fourteenth amendments, as well as pendent state law claims.

### 3. Relief Requested

In addition to the exemplary and punitive damages Lawrence seeks against the

individual defendants and asks for costs and attorney fees, Lawrence is requesting

declaratory and injunctive relief including:

1.  Declaratory judgment that Defendants' policies and practices violated his Constitutional rights;

2.  Enjoining enforcement of Bloomfield Township Ordinance No. 137, § 16.01 (a);

3.  Enjoining Defendants from contacting his employer, co-workers, university, and other affiliates;

4.  Enjoining Defendants from questioning, detaining, searching, abusing, or charging Lawrence;

5.  Enjoining Defendants from engaging in and following policies, practices, or procedures relating to police misconduct; and

6.  Compelling Defendants to adopt policies and procedures to prevent police misconduct.

### III. Legal Standards[1]

### A. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that

there is "no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of

material fact when "the record taken as a whole could not lead a rational trier of fact to

---

[1]Although Defendants' motion is for summary judgment, as discussed below some of Lawrence's claims are more appropriately analyzed under Fed. R. Civ. P. 12(b)(6).

find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a trier of fact or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001). Moreover, pro se complaints are to be construed liberally in favor of the pro se party. Haines v. Kerner, 404 U.S. 519 (1972).

### B. Motion to Dismiss

When analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." Sinay v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991).

"To survive a motion to dismiss . . . a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory . . . . [T]he court must consider as true the well-pleaded allegations of the complaint and construe them in the light most favorable to the plaintiff. However, [a] court need not accept as true legal conclusions or unwarranted factual

10

inferences.  In order for a dismissal to be proper, it must appear beyond doubt that the

plaintiff would not be able to recover under any set of facts that could be presented

consistent with the allegations of the complaint."  Varljen v. Cleveland Gear Co., 250

F.3d 426 (6th Cir. 2001) (internal citations and quotations omitted).

IV. Analysis

A. Defendants' Motion

1. Constitutionality of Bloomfield Township Ordinance No. 137, § 16.01(a)[2]

Lawrence argues that the Ordinance is "unconstitutionally vague, overbroad,

impinges upon First Amendment rights and is preempted by state law."  Because of this

belief, Lawrence argues the state criminal charges brought against him for violating the

Ordinance were unconstitutional.  However, in addition to raising this issue before this

Court, Lawrence repeatedly raised this issue before Michigan's 48th District Court in the

course of defending the state criminal charges against him and in the Michigan Court of

Appeals.  Accordingly, Defendants argue that Lawrence is collaterally estopped from

relitigating this issue before this Court.

1. Collateral Estoppel

a. Purpose

---

[2]The ordinance provides:

Section 16.01.  Interference with Police Department

(a)      No person shall resist any police officer, any member of the police
department or any person duly empowered with police authority while in the
discharge or apparent discharge of his duty, or in any way interfere with or hinder
him with the discharge of his duty.

Bloomfield Township Ordinance No. 137, § 16.01(a).

11

The doctrine of collateral estoppel has two purposes: to preclude a party from relitigating an issue previously resolved adversely to them, and to conserve judicial resources by preventing unnecessary litigation.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  Under this rule, a party may not relitigate an issue in a different cause of action between the same parties once that issue has been actually and necessarily decided in a prior action.  Montana v. United States, 440 U.S. 147, 153 (1979).  However, Courts repeatedly have recognized that one instance in which collateral estoppel may not apply is where the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the previous case.  Id.

### b. Legal Standard

The Full Faith and Credit statute provides that state court judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  28 U.S.C. § 1738.  Accordingly, to determine whether collateral estoppel precludes a party from relitigating an issue previously decided in a different forum, this Court must use the other forum's law on collateral estoppel.  Brindley v. Best, 192 F.3d 525 (6th Cir. 1999).  First, Michigan law requires mutuality of estoppel – i.e., the party seeking to invoke collateral estoppel to prevent an adversary from relitigating an issue must have been a party or in privity with a party in the previous action.  Lichon v. American Universal Insurance Co., 435 Mich. 408, 427, 459 N.W.2d 288, 297-98 (Mich. 1990).  Once mutuality has been established, Michigan law dictates that collateral estoppel "precludes relitigation of an issue in a subsequent,

12

different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined." People v. Gates, 434 Mich. 146, 154 (1990).  To determine if an issue was "actually litigated," this Court must determine "whether the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue." Id. at 156-57.  An issue was "necessarily determined" if it was "essential" to the judgment. Id. at 158.

### c. Application

Bloomfield Township was the plaintiff and Lawrence was the defendant in the state court action.  In this action, Bloomfield Township is the defendant and Lawrence is the plaintiff.  Therefore, mutuality of estoppel is present.

Lawrence challenged the constitutionality of the Bloomfield Township ordinance numerous times in the state court action.  Of particular note is Lawrence's "Motion to Quash Information, Complaint and Warrant," which he filed with Michigan's 48th District Court on September 22, 2000.  Every allegation Lawrence stated in that motion centered on his argument that the Bloomfield Township ordinance was unconstitutional. The Honorable David Kerwin, District Judge in Michigan's 48th Judicial District, held a hearing on that motion on November 1, 2000, and Lawrence presented his arguments in support of declaring the Ordinance unconstitutional.  Judge Kerwin denied Lawrence's motion, specifically stating that "the statute is not void for vagueness." Transcript, Motion to Quash Information, Complaint and Warrant, Nov. 1, 2000, p. 15, line 7.  During the hearing, Judge Kerwin also told Lawrence that the ruling regarding the constitutionality of the Ordinance does not preclude Lawrence from addressing that

13

issue in the context of the state court trial.  Id. at 15, lines 16-21.

The state court action proceeded to a jury trial and Lawrence was convicted of violating the Ordinance on April 8, 2002.  Because that defense was raised numerous times during the course of the state court proceedings, and because Lawrence litigated that issue before Judge Kerwin in the previously discussed Motion to Quash, it is clear to this Court that Lawrence was afforded a full and fair opportunity to litigate the issue. Accordingly, the issue of the Ordinance's constitutionality was "actually litigated" for purposes of invoking collateral estoppel.  Moreover, the issue was "necessarily determined" because the issue was essential to the ultimate judgment that Lawrence was guilty of violating the Ordinance.  Had the state court deemed the Ordinance unconstitutional, Lawrence could not have been convicted on April 8, 2002.

Moreover, Lawrence again raised the issue of the constitutionality of the ordinance in his action filed in Oakland County Circuit Court against Bloomfield Township.  The Michigan Court of Appeals affirmed the circuit court's grant of summary disposition to Bloomfield Township, and specifically noted that "plaintiff's arguments challenging the constitutionality of the ordinance were raised and addressed ina district court [criminal] proceedings."  Lawrence v. Bloomfield Twp., No. 243527 slip op. at p. 2.

Accordingly, Lawrence is collaterally estopped from relitigating the issue of the constitutionality of Bloomfield Township Ordinance No. 137, § 16.01(a) before this Court.

### 2. Preemption

In his first amended complaint, ¶ 36(e), Lawrence asserts that the Ordinance "conflicts with the State of Michigan's statutory scheme and is preempted by state law."

14

Lawrence does not cite any Michigan statute in support of his preemption argument, and Defendants do not address this preemption argument in their papers.  A fair reading of Lawrence's first amended complaint suggests that the preemption argument is an attempt by Lawrence to argue in favor of finding the Ordinance unconstitutional.  In any event, because defendants have not responded to this argument and Lawrence has not provided any authority for this argument, nor argued it in his response to defendants' motion, the Court declines to address it.

### 3. Federal Claims Under 42 U.S.C. § 1983[3]

"To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right secured by the Constitution and the laws of the United States by one acting under the color of law."  Ahlers v. Schebil, 188 F.3d 365 (6th Cir. 1999) (internal citations omitted).

### a. Municipal Liability Under § 1983 – Bloomfield Township, Payne, and Werner

#### i. Legal Standard

A political subdivision is liable under § 1983 if its official policies or informal customs cause constitutional violations.  Heflin v. Stewart County, Tennessee, 958 F.2d 709, 716 (6th Cir. 1992).  Moreover, and significantly, a governmental entity may have

---

[3]Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983.

liability for the same actions for which public officials enjoy qualified immunity.  Barber v. City of Salem, Ohio, 953 F.2d 232, 237-38 (6th Cir. 1992).

In order to state a claim against a municipality under § 1983, a plaintiff must show that the municipality, through custom or policy, caused the alleged constitutional violation.  Monell v. Dept. of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  A municipality cannot be vicariously liable under § 1983 for a constitutional violation caused by its employees or agents.  Id. at 694, 98 S. Ct. at 2037.  Rather, a local government can be liable under § 1983 when a government custom is "so permanent and well settled as to constitute a custom or usage with the force of law," Davenport v. Simmons, 192 F. Supp. 2d 812, 824 (W.D. Tenn. 2001), or when the government's official policy is the "moving force of the constitutional violation."  Monell at 694, 98 S. Ct. at 2037-38.  See also Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d. 452 ("municipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives. . . .").

In order to show the existence of a custom or policy for purposes of municipal liability under § 1983, the plaintiff must plead specific facts in support of the claim; the plaintiff may not merely state conclusory allegations.  Culberson v. Doan, 125 F. Supp. 2d 252, 263-64 (S.D. Ohio 2000).

### ii. Application

In the subsection "Third Cause of Action" of his first amended complaint (¶ 66), Lawrence alleges Defendants Bloomfield Township, Payne, and Werner violated his Fourteenth Amendment constitutional rights.  However, Lawrence pleaded the alleged

16

constitutional violation solely with conclusory allegations, stating in his first amended complaint that the Township, Payne, and Werner violated his constitutional rights "by authorizing and tolerating the policies, customs, and practices of stopping, questioning, detaining, searching, physically abusing and wrongfully charging Plaintiff in violation of his federally secured rights. . . ."  Lawrence asserted no specific facts to support that claim as is required under Culberson, supra.  Lawrence has failed to properly state a claim against Bloomfield Township, Payne, and Werner.  Accordingly, Lawrence's claim under the Fourteenth Amendment must be dismissed under Fed. R. Civ. P. 12(b)(6).

b. Individual Liability Under § 1983: Chief Werner, Detective Cutright, and Monkkonen, Godlewski, Kelley and McAtee[4]

i. Qualified Immunity

The doctrine of qualified immunity allows governmental officials sued in their individual capacities to be free from liability on a plaintiff's claim for civil damages unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity gives police officers broad protection because the doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).  To prevail against a qualified immunity defense, a plaintiff must first demonstrate that the defendant violated one of plaintiff's constitutional rights.  Wilson v. Layne, 526 U.S. 603,

---

[4]Lawrence did not allege Werner and Cutright were personally involved in the actions on August 19, 2000, giving rise to the alleged constitutional violations against Lawrence.  Accordingly, Lawrence's claim against Werner and Cutright in their individual capacities should be dismissed.  The following discussion relates to the individual liability of the police officers present at the scene on August 19, 2000.

609 (1999).  The plaintiff must then show that the constitutional right was "clearly

established."  Gragg v. Kentucky Cabinet for Workforce Development, 289 F.3d 958

(6th Cir. 2002).  The question of whether an allegedly violated right is clearly

established is determined by asking whether "a reasonable official would understand

that what he is doing violates that right."  Id., citing Anderson v. Creighton, 483 U.S.

635, 640 (1987).

### c. Fourth Amendment Violation[5]

In his "First Cause of Action" in his first amended complaint (¶¶ 50-57), Lawrence

alleges Defendants violated his Fourth Amendment constitutional rights by entering the

house without a warrant and by arresting him without probable cause.

"[T]here is no precise formula for determining the existence or nonexistence of

probable cause; rather, a reviewing court is to take into account 'the factual and

practical considerations of everyday life' that would lead a reasonable person to

determine that there is a reasonable probability that illegality has occurred."  United

States v. Strickland, 144 F.3d 412, 415 (6th Cir. 1998).  An officer has probable cause if

"the facts and circumstances within the officer's knowledge . . . are sufficient to warrant

a prudent person, or one of reasonable caution, in believing, in the circumstances

shown, that the suspect has committed, is committing, or is about to commit an

---

[5]The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures, shall not be violated, and
no Warrants shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be searched, and the persons
or things to be seized.

U.S. Const. amend. IV.

offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979).

i. Warrantless Search

The Fourth Amendment protects the sanctity of the home, and at the core of the Amendment is "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S. Ct. 679, 683, 5 L. Ed. 2d 734 (1961). Warrantless entries into a person's home are presumptively unreasonable (see Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)), but the Supreme Court has recognized certain exceptions to that general rule. Notably, the presence of exigent circumstances may justify a warrantless entry. See Payton v. New York, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382 (1980). As the Sixth Circuit Court of Appeals held in United States v. Straughter, 950 F.2d 1223 (6th Cir. 1991), law enforcement officers may enter a home without a warrant to preserve evidence, provided such entry is based upon probable cause and supported by exigent circumstances. Id. at 1230. The Sixth Circuit's two-pronged test used to determine when the possibility of the destruction of evidence may justify a warrantless entry requires the police officer to demonstrate "(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that the loss or destruction of evidence is imminent." Id. (citing United States v. Sangineto-Miranda, 859 F.2d 1501 (6th Cir. 1988)).

Here, defendants argue the officers had probable cause to believe the board Lawrence's father used to strike Christian Lawrence was still inside the house and that the officers had a duty to investigate the possibility of other victims in the house.

19

Further, the officers point to Bloomfield Township Police Department General Order 95-04B, which establishes the Department's policy regarding domestic violence incidents. Specifically, § V(C) states "[o]fficers shall identify, secure and impound as evidence or safekeeping, any weapons, whether used in the domestic violence incident or not, as well as other objects used as weapons in the domestic violence incident."  Additionally, § VI(A)(3) provides: "[o]fficers shall insure the identification and collection all possible evidence, including a. identity of all persons by name, address, date of birth and telephone number at the domestic violence scene (to include all family members)."

When the officers arrived at the scene they spoke with Christian Lawrence and Lawrence, Sr., about the incident.  Their discussions with Christian Lawrence and Lawrence, Sr. (particularly Lawrence, Sr.'s admission that he committed the crime) clearly established probable cause to believe a crime was committed at the scene and evidence of the crime was still present.  Godlewski and Monkkonen attempted to speak with Lawrence, but he said nothing other than "fuck you."  The officers knew a third party (Lawrence) was inside the home, but they did not have any knowledge about other potential suspects or victims inside, and Lawrence was not offering any information beyond expletives.  The Officers had a reasonable belief that other suspects and/or victims could have been inside the dwelling.  Moreover, because of the officers' uncertainty regarding other parties inside the house, and because of the knowledge that evidence of the crime was still inside, the officers had a reasonable belief that the evidence of the crime would be lost or destroyed.  Exigent circumstances existed during the officers' on-scene investigation, therefore justifying McAtee's and  Monkkonen's warrantless entries into the house.  Lawrence's Fourth Amendment right against

20

warrantless searches was not violated; the officers are entitled to qualified immunity.

### ii. Arrest / Probable Cause

Lawrence also asserts the officers arrested him without probable cause.  The incident reports filed by the officers clearly indicate the Lawrence was arrested for interfering with a police officer under Bloomfield Township Ordinance No. 137, § 16.01(a).  The Officers were in the midst of an ongoing investigation and a General Order by the Bloomfield Township Police Department to identify and secure all evidence of the crime and to identify all persons at the scene.  During this investigation Godlewski and Monkkonen attempted to talk with Lawrence so he could exit the house while the officers searched the premises for suspects, victims, and evidence.  However, Lawrence repeatedly refused to cooperate with Godlewski and Monkkonen during the discharge of their duty; in fact, he indicated to them that the only way they would be able to enter the house would be to arrest him.  Lawrence prevented the officers from continuing their investigation into the domestic violence that occurred in the house.  As such, he was in direct violation of the Ordinance which prohibits resisting a police officer or interfering or hindering an officer with the discharge of his duty.  The totality of the circumstances indicates that Monkkonen had a sufficient factual basis to support a finding of probable cause to arrest Lawrence.  Accordingly, Lawrence's Fourth Amendment right against unreasonable searches and seizures was not violated; Monkkonen is entitled to qualified immunity.

### iii. Excessive Force

Lawrence claims that the Officers engaged in excessive force when arresting him.  In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court established the framework for analyzing whether the amount of force used to effect a seizure is

constitutional.  The use of force must be objectively reasonable, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  Further, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

Here, the amount of force used to remove Lawrence from the home was reasonable.  Lawrence clearly attempted to prevent the officers from entering the home, thus preventing them from doing their job of diffusing a domestic situation, including searching for the weapon and other possible suspects and victims.  Lawrence was belligerent, used profanity at the officers, and stood in a position so as to block them from entering.  It was clear that Lawrence was not going to allow the officers to enter.  Under the circumstances, the officers actions in using force to remove Lawrence in order to enter the home in order was objectively reasonable.  Thus, Lawrence has not made out a claim for excessive force and even if he had, the officers are entitled to qualified immunity.

### iv. First Amendment Violation[6]

Lawrence's "First Cause of Action" in his first amended complaint (¶¶ 50-57) also claims that the officers violated his First Amendment constitutional rights.  Although Lawrence did not plead any specific facts in his complaint to support the allegation, a

---

[6]The First Amendment provides, in relevant part:

Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.

fair reading of Lawrence's papers seems to indicate an argument that he was arrested merely for uttering "fuck you" to the officers and for refusing to answer Monkkonen's question regarding whether Lawrence witnessed his father assault his brother.  As stated above in the Fourth Amendment analysis, Lawrence was not arrested merely for his utterances; rather, he was arrested because he prevented and interfered with the officers from continuing their investigation by not allowing them to secure the premises.  Accordingly, the officers did not violate Lawrence's First Amendment rights and they are entitled to qualified immunity.

### v.  Equal Protection / Due Process Claims

Lawrence claims that the officers violated his right to equal protection and due process because he was punished (arrested) for citing case law regarding the Fourth Amendment to the officers.  Lawrence, however, has failed to allege any similarly situated person has been treated differently than his supposed "class of one."  See Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  Moreover, as discussed above, the officers lawfully entered the home for a protective sweep.  Lawrence was arrested not because he cited case or otherwise criticized the officers; rather, it was because he interfered with them in their investigation and execution of their duties.  In short, Lawrence has not made out a claim for violation of equal protection or due process.

### 4. State Law Claims

The remaining claims set forth in the complaint are based on Michigan law.  Lawrence's "Second Cause of Action" in his first amended complaint alleges the following violations: (1) harassment, (2) false arrest, (3) false imprisonment, (4) malicious prosecution, (5) defamation, (6) slander, (7) assault, (8) battery, (9) intentional infliction of emotional distress, (10) excessive use of force, (11) cruel and unusual

23

punishment, (12) deprivations of liberty and property without due process of law, and (13) denial of equal protection of the laws, "all in violation of the Michigan Constitution and laws of the State of Michigan." Because Lawrence has failed to assert a valid claim under § 1983, there is no federal claim remaining for the Court to decide. Because the parties to this action are non-diverse and no other independent jurisdiction exists, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and therefore dismisses those claims without prejudice. See 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction).

However, even if there were a valid federal claim remaining for the Court to decide, Lawrence's state-law claims would be dismissed under Fed. R. Civ. P. 12(b)(6) because Lawrence merely included an all-encompassing list of the alleged state-law violations without pleading the factual basis for any of the claims.

### B.  Habeas Petition

On July 8, 2005, Lawrence filed a petition for a writ of habeas corpus in this district, claiming that his conviction violates his constitutional rights and specifically that the ordinance is unconstitutional and otherwise violates his First Amendment rights. Lawrence v. 48th District Court, 05-72701 (E.D. Mich). Lawrence asks that if the Court finds any of his claims are foreclosed by his conviction, that the Court stay those claims until his habeas petition is resolved. The Court finds no basis for a stay.

### V. Conclusion

For the reasons stated above, defendants' motion for summary judgment is GRANTED and Lawrence's federal claims are DISMISSED. Lawrence's claim regarding the constitutionality of the Bloomfield Township Ordinance is barred by collateral estoppel. Lawrence's § 1983 claim against Bloomfield Township, Payne, and

24

Werner is dismissed under Fed. R. Civ. P. 12(b)(6).  Lawrence's § 1983 claims against

Chief Werner; Detective Cutright; and Officers Monkkonen, Godlewski, Kelley, and

McAtee for violation of the Fourth and First Amendments are DISMISSED under Fed. R.

Civ. P. 56.

Lawrence's state law claims are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.


 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  October 17, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, October 17, 2005, by electronic and/or ordinary mail.

 s/Julie Owens
Case Manager
(313) 234-5160